UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AUCTUS FUND, LLC, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 17-cv-10543-ADB |
| FIRST COLUMBIA GOLD CORP., | * |
| Defendant. | * |

# MEMORANDUM AND ORDER ON MOTION FOR DEFAULT JUDGMENT

BURROUGHS, D.J.

This case concerns an alleged breach of the obligation to make payments pursuant to a securities purchase agreement and an associated convertible promissory note by Defendant First Colombia Gold Corp. ("First Columbia"). Plaintiff Auctus Fund, LLC ("Auctus") holds the note and filed this lawsuit to recover its damages. Auctus moves for a default judgment awarding damages, attorney's fees, costs, and injunctive relief. For the reasons discussed below, default judgment shall enter for $322,644.66.

## I. PROCEDURAL BACKGROUND

On March 29, 2017, Auctus filed this action against First Columbia, alleging breach of contract ("Count I"), breach of the implied covenant of good faith and fair dealing ("Count II"), unjust enrichment ("Count III"), breach of fiduciary duty ("Count IV"), fraud and deceit ("Count V"), negligent misrepresentation ("Count VI"), and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A §§ 2, 11, ("Count VII"). [ECF No. 1 ("Complaint" or "Compl.")]. On August 18, 2017, because Auctus had not filed proof of service and First Columbia had not appeared, the Court ordered Auctus to show cause, by September 8, 2017, as

to why this case should not be dismissed for failure to make timely service. Id. First Columbia was then purportedly served on September 7, 2017, [ECF No. 5], and on September 8, 2017, Auctus filed a response to the Court's Order to Show Cause, [ECF No. 6].

On October 12, 2017, Auctus filed its first Motion for Entry of Default with Certificate of Service, [ECF No. 7], which the Court denied without prejudice and with leave to renew, [ECF No. 10]. The Court found that "Plaintiff ha[d] not explained how leaving the summons at Defendant's former place of business is sufficient to comply with the requirements of Fed. R. Civ. P. 4(h) or any other applicable state rules." [ECF No. 8]. The Court asked Auctus to complete service and file a renewed motion by February 12, 2018. [ECF No. 10]. Auctus took no further action in this case for seven months.

On January 23, 2019, the Court ordered Auctus to show cause, by January 30, 2019, as to why the case should not be dismissed for failure to prosecute, or to file a motion for entry of default by that date. [ECF No. 12]. Auctus then filed the instant Amended Motion for Default Judgment, which seeks compensatory damages of $310,974.85, punitive damages of $932,924.55 pursuant to its Chapter 93A claim, $8,697.50 in attorney's fees, $455.00 in costs, and injunctive relief. [ECF Nos. 13, 13-11]. On March 14, 2019, the Court requested that Auctus move for an entry of default under Rule 55(a). [ECF No. 16]. On March 19, 2019, Auctus filed a Request for Entry of Default. [ECF No. 17]. On March 21, 2019, the clerk entered a default pursuant to Federal Rule of Civil Procedure 55(a). [ECF No. 19].

II. **FACTUAL BACKGROUND**

Under Federal Rule of Civil Procedure 55, an entry of default against a Defendant constitutes an admission of liability. Sec. & Exch. Comm'n v. Esposito, 260 F. Supp. 3d 79, 84 (D. Mass. 2017) (quoting Vazquez-Baldonado v. Domenech, 792 F. Supp. 2d 218, 221 (D.P.R.

2011)). First Columbia is therefore "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." Id. (quoting In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002)). "On a motion for a default judgment, however, it is appropriate to independently 'examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.'" Id. (quoting Ramos–Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002)). Accordingly, the following summary of facts are drawn primarily from the Complaint.

On or about October 16, 2014, First Columbia executed a securities purchase agreement and a convertible promissory note in favor of Auctus. Compl. ¶ 9. The note has a principal amount of $77,750, an 8 percent interest rate, and is convertible into common stock at a conversion price determined by a formula stated in the note. [ECF No. 1-2 at 2–4]. The purchase agreement and note also provide for certain penalties and a heightened interest rate in the event of default. [See ECF Nos. 1-1, 1-2]. On May 23, 2016, Auctus executed and delivered a notice of conversion that elected to make a partial conversion of accrued and unpaid interest. Compl. ¶ 10. In response, First Columbia failed to properly allocate and/or reserve such shares, which denied the Fund its right to become a shareholder in First Columbia, in violation of the terms of the SPA and note. Compl. ¶ 10. These events qualified as "Events of Default" as defined in the note and resulted in the incursion of liability for double the "Default Sum," an amount calculated based on the interest and penalties due under the note at that time. [ECF No. 1-2]. Auctus has not been paid. Until paid, the Default Sum continues to accrue interest at a rate of twenty-two percent (22%) per annum. Compl. ¶ 12; see also [ECF No. 1-2 at 2].

Auctus made a risky investment, and the Complaint contains no non-conclusory allegation that it was misled into doing so. Auctus has recognized that its "loans" provide

for a variety of "penalties" precisely because of their "high-risk nature." [ECF No. 13-1 ¶ 14]. Although the Complaint contains several allegations that, for example, First Columbia "made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity," and "made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff," there is no sufficiently detailed factual allegation as to what information First Columbia concealed or misstated. Compl. ¶ 37.

## III. DISCUSSION

A default judgment may be entered without a hearing under Federal Rule of Civil Procedure 55(b) if "a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d at 114. As an initial matter, the Court "has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties" before entering a default judgment. Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp., No. 09-236 S., 2010 WL 1424722, at *2 (D.R.I. Mar. 12, 2010), aff'd and adopted, 2010 WL 1376293 (D.R.I. Apr. 6, 2010). The Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, as "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(2).

The Complaint easily states a claim for breach of contract. Auctus invested funds in First Columbia for which it has not been repaid in accordance with the terms of the securities purchase agreement and the note. Further, the Court takes as fact the allegations that Auctus executed and delivered its notice of partial conversion, and that First Columbia failed to properly allocate

and/or reserve applicable shares, in violation of the terms of the parties' agreements. Although the Complaint contains no details about the circumstances that led First Columbia to fail to allocate and/or reserve such shares, the Court infers that the action was detrimental to Auctus' rights under the parties' agreement, and therefore constitutes a breach of the covenant of good faith and fair dealing. See Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013) ("The Massachusetts covenant of good faith and fair dealing is taken to be implied in every contract, and provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991))).

The Court cannot find, however, a non-conclusory factual basis in the Complaint from which it can infer that First Columbia engaged in fraud, was unjustly enriched, breached a fiduciary duty, or made negligent misrepresentations. See Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005) ("[F]raudulent misrepresentation under Massachusetts law" requires "that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" (quoting Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 (Mass. 2002))); Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 234 (1st Cir. 2005) ("Unjust enrichment provides an equitable stopgap for occasional inadequacies in contractual remedies at law by mandating that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'"); Pearson v. United States, 831 F. Supp. 2d 514, 519 (D. Mass. 2011) ("To prevail on such a claim, a plaintiff must show (1) the existence of a fiduciary duty arising from a relationship between the parties, (2) a breach of that duty, (3)

5

damages and (4) causation."). The facts alleged in the Complaint do not establish that First Columbia concealed information from Auctus, received a benefit from Auctus for which the parties' contractual agreements do not supply an adequate remedy, or that a fiduciary relationship was formed. Instead, even taken in the light most favorable to Auctus, the allegations suggest that Auctus lent money to a high-risk business, that then failed. Auctus' Chapter 93A claim also fails, because it is based upon factually unsupported allegations of fraud and unspecified violations of "requirements, terms and conditions of existing statutes, [and] rules and regulations meant for the protection of the public's health, safety or welfare." Compl. ¶ 44.

Even if the Complaint contained sufficient detail to plausibly allege that First Columbia committed torts or statutory violations, the Court would not award a default judgment greater than that awarded here. See Pizzo v. Gambee, 754 F. Supp. 2d 234, 237–38 (D. Mass. 2010), amended by 796 F. Supp. 2d 270 (D. Mass. 2011) ("When a defendant fails to answer in response to a complaint seeking multiple damages pursuant to Chapter 93A, the default will establish liability but leave open the question of relief," and thus, "[a] default judgment does not bind the Court to the damages claimed in a complaint."); see also Marshall v. Stratus Pharm., Inc., 749 N.E.2d 698, 708 (Mass. App. Ct. 2001) ("Although the plaintiff alleged that the misrepresentations were wilful, the entitlement of a plaintiff to double or triple damages because of the wilfulness of a defendant is treated as a question relating to damages and, therefore, is not precluded by a default.").

IV. DAMAGES

"It is settled that, if arriving at the judgment amount involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind." HMG Prop. Inv'rs, Inc. v. Parque

6

Indus. Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988). "A hearing may be required, however, to set damages when the amount is in dispute or is not ascertainable from the pleadings." In re The Home Rests., Inc., 285 F.3d at 114. Federal Rule of Civil Procedure 55(b)(2) provides that a court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Here, the amount at issue is ascertainable from the securities purchase agreement, the note, the affidavits, and the exhibits that Auctus has submitted. See [ECF Nos. 1-1, 1-2, and exhibits to ECF No. 13].

Auctus has demonstrated that the principal amount of its debt was $310,974.85 as of January 29, 2019, with a portion of that amount accruing interest at a contractual rate of twenty-two (22%) percent per annum. See [ECF No. 13-2]. The Court finds that as of March 21, 2019, Auctus is due principal, interest, and penalties under the note in the amount of $313,492.16. The securities purchase agreement provides for the prevailing party to recover reasonable attorney's fees and costs, [ECF No. 1-1 at 19–20], and the Court awards attorney's fees of $8,697.50 and costs of $455.00, see [ECF No. 13-4 at 7–9]. The Court declines to award punitive damages or issue an injunction,[1] because it finds the allowed pecuniary award to be at least adequately

---

[1] Auctus proposes that the Court order that: "a permanent injunction for equitable relief and specific performance shall issue compelling the Defendant, First Columbia Gold Corp., to convert, and to cause, permit, cooperate and facilitate the conversion of its outstanding debt, as held by Auctus, into publicly tradeable shares of FCGD common stock; and . . . that the conversions which are subject to the instant permanent injunction for equitable relief and specific performance shall be such amounts and timing as determined by the Plaintiff and upon the Fund's written Notice(s) of Conversion to the Defendant and its transfer agent, Direct Transfer, LLC, or its successor(s); and . . . that the Plaintiff shall provide actual notice, by personal service or otherwise, of this Order upon the Defendant's transfer agent, Direct Transfer, LLC, or its successor(s), as an agent of and as a person 'in active concert' with the Defendant, and that Direct Transfer, LLC, or its successor, upon actual notice by personal service or otherwise, shall, upon receipt of the Fund's written Notice(s) of Conversion, in such amounts and timing as determined by the Plaintiff, convert, and cause, permit, cooperate and facilitate the conversion of

7

compensatory. Further, the Court is concerned that the proposed injunction lacks clarity, presents administrative difficulties, and seeks to bind parties that are not before the Court. See [ECF No. 17-12].

V. **CONCLUSION**

Accordingly, a default judgment shall enter in the amount of $322,644.66 (being the sum of the $313,492.16 due under the note, $8,697.50 in attorney's fees, and $455.00 in costs).

**SO ORDERED.**

March 21, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

the Defendant's outstanding debt, as held by Auctus, into publicly tradeable shares of FCGD common stock." [ECF No. 13-3].